# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF KENTUCKY
## BOWLING GREEN DIVISION
## CIVIL ACTION NO. 1:24-CV-00035-HBB

**MICHELLE G.**[1]                                                              **PLAINTIFF**

**VS.**

**MARTIN O'MALLEY, COMMISSIONER OF**
**SOCIAL SECURITY**                                                          **DEFENDANT**

## MEMORANDUM OPINION
## AND ORDER

### I.      BACKGROUND

Before the Court is the Complaint (DN 1) of Michelle G. ("Plaintiff") seeking judicial review of the final decision of the Commissioner pursuant to 42 U.S.C. § 405(g).  Both the Plaintiff (DN 12) and Defendant (DN 14) have filed a Fact and Law Summary.  For the reasons that follow, the final decision of the Commissioner is **AFFIRMED**.

Pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73, the parties have consented to the undersigned United States Magistrate Judge conducting all further proceedings in this case, including issuance of a memorandum opinion and entry of judgment, with direct review by the Sixth Circuit Court of Appeals in the event an appeal is filed (DN 8).  By Order entered April 23, 2024 (DN 9), the parties were notified that oral arguments would not be held unless a written request therefor was filed and granted.  No such request was filed.

---

[1] Pursuant to General Order 22-05, Plaintiff's name in this matter was shortened to first name and last initial.

## II.      FINDINGS OF FACT

On March 30, 2021, Plaintiff protectively filed an application for Disability Insurance Benefits (Tr. 194; 413-15; 420-26) and on March 25, 2021, Plaintiff protectively filed an application for Supplemental Security Income (Tr. 194; 427-33).   Plaintiff alleged that she became disabled on February 28, 2013, as a result of fibromyalgia, lupus, kidney and liver issues, neck pain, neck surgery, a heart attack, hypotension, fractured pelvis, concussion from MVA, PTSD, anxiety, depression, a personality disorder, and being a recovering alcoholic (Tr. 194; 262; 271; 279; 289; 459).   Plaintiff subsequently amended the onset date to December 20, 2016 (Tr. 446-47).   The application was denied initially on August 6, 2021, and upon reconsideration on December 29, 2021 (Tr. 194; 277; 278; 299; 300).   On February 10, 2022, Plaintiff filed a written request for hearing (Tr. 194; 332).

On October 17, 2022, Administrative Law Judge Susan Brock ("ALJ") conducted a telephonic hearing due to the extraordinary circumstance presented by COVID-19 (Tr. 194; 215). Plaintiff and her counsel, Mary Burchett Bower, participated in the telephonic hearing (*Id.*). Katherine Bradford, an impartial vocational expert, testified during the telephonic hearing (*Id.*).

In a decision dated January 13, 2023, the ALJ evaluated this adult disability claim pursuant to the five-step sequential evaluation process promulgated by the Commissioner (Tr. 194-205). The ALJ noted that the Plaintiff met the insured status requirements of the Social Security Act through March 31, 2017 (Tr. 197).   At the first step, the ALJ found Plaintiff has not engaged in substantial gainful activity since February 28, 2013 [2] (*Id.*).   At the second step, the ALJ determined that Plaintiff has the following severe impairments: degenerative disc disease,

---

[2] The ALJ uses the first alleged onset date of February 28, 2013.   Plaintiff amended her filings and instead alleges onset of disability as December 20, 2016 (Tr. 446-47).

2

depressive disorder, anxiety, and bipolar disorder (*Id.*).   The ALJ also determined that Plaintiff has the following non-severe impairments: history of alcohol abuse in remission, coronary artery disease, and high blood pressure (*Id.*).   At the third step, the ALJ concluded that Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in Appendix 1 (*Id.*).

At step four, the ALJ found that Plaintiff has the residual functional capacity ("RFC") to perform light work as defined in 20 CFR §§ 404.1567(b) and 416.967(b) except she can occasionally climb ramps and stairs, but not ladders, ropes, or scaffolds; she can occasionally stoop, kneel, crouch, and crawl; she can occasionally reach overhead bilaterally and can frequently handle and finger bilaterally; she can have occasional exposure to vibration, dangerous machinery, and unprotected heights; she can understand, remember, and carry out simple instructions, and can sustain concentration in 2-hour segments for repetitive tasks; and she can have occasional interaction with supervisors, co-workers, and the public, and can tolerate occasional workplace changes (Tr. 200).   Additionally, the ALJ determined that Plaintiff is unable to perform any past relevant work (Tr. 204).

The ALJ proceeded to the fifth step where she considered Plaintiff's RFC, age, education, and past work experience as well as testimony from the vocational expert (Tr. 204-05).   The ALJ found that Plaintiff can perform a significant number of jobs that exist in the national economy (*Id.*).   Therefore, the ALJ concluded that Plaintiff has not been under a "disability," as defined in the Social Security Act, from February 28, 2013, through the date of the decision (Tr. 205).

Plaintiff timely filed a request for the Appeals Council to review the ALJ's decision (Tr. 410-12).   The Appeals Council denied Plaintiff's request for review (Tr. 1-4).

## III.   CONCLUSIONS OF LAW

### A.   Standard of Review

Review by the Court is limited to determining whether the findings set forth in the final decision of the Commissioner are supported by "substantial evidence," 42 U.S.C. § 405(g); *Cotton v. Sullivan*, 2 F.3d 692, 695 (6th Cir. 1993); *Wyatt v. Sec'y of Health & Hum. Servs.*, 974 F.2d 680, 683 (6th Cir. 1992), and whether the correct legal standards were applied.   *Landsaw v. Sec'y of Health & Hum. Servs.*, 803 F.2d 211, 213 (6th Cir. 1986).   "Substantial evidence exists when a reasonable mind could accept the evidence as adequate to support the challenged conclusion, even if that evidence could support a decision the other way."   *Cotton*, 2 F.3d at 695 (quoting *Casey v. Sec'y of Health & Hum. Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993)).   In reviewing a case for substantial evidence, the Court "may not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility."   *Cohen v. Sec'y of Health & Hum. Servs.*, 964 F.2d 524, 528 (6th Cir. 1992) (quoting *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984)).

As previously mentioned, the Appeals Council denied Plaintiff's request for review of the ALJ's decision (Tr. 1-4).   At that point, the ALJ's decision became the final decision of the Commissioner.   20 C.F.R. §§ 404.955(b), 404.981, 422.210(a); *see* 42 U.S.C. § 405(h) (finality of the Commissioner's decision).   Thus, the Court reviews the ALJ's decision and the evidence that was in the administrative record when the ALJ rendered the decision.   42 U.S.C. § 405(g); 20 C.F.R. § 404.981; *Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996); *Cotton*, 2 F.3d at 695-96.

B.     The Commissioner's Sequential Evaluation Process

The Social Security Act authorizes payment of Disability Insurance Benefits and Supplemental Security Income to persons with disabilities.   42 U.S.C. §§ 401 et seq. (Title II Disability Insurance Benefits), 1381 et seq. (Title XVI Supplemental Security Income).   The term "disability" is defined as an

> [I]nability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]

42 U.S.C. § 423(d)(1)(A) (Title II); 42 U.S.C. § 1382c(a)(3)(A) (Title XVI); 20 C.F.R. §§ 404.1505(a), 416.905(a); *Barnhart v. Walton*, 535 U.S. 212, 214 (2002); *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).

The Commissioner has promulgated regulations setting forth a five-step sequential evaluation process for evaluating a disability claim.   *See* "Evaluation of disability in general," 20 C.F.R. §§ 404.1520, 416.920.   In summary, the evaluation proceeds as follows:

1)     Is the claimant engaged in substantial gainful activity?

2)     Does the claimant have a medically determinable impairment or combination of impairments that satisfies the duration requirement and significantly limits his or her ability to do basic work activities?

3)     Does the claimant have an impairment that meets or medically equals the criteria of a listed impairment within Appendix 1?

4)     Does the claimant have the RFC to return to his or her past relevant work?

5)     Does the claimant's RFC, age, education, and past work experience allow him or her to perform a significant number of jobs in the national economy?

5

20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v).   Here, the ALJ denied Plaintiff's claim at the fifth step.

C.     Finding No. 5

*1.  Arguments of the Parties*

    a.  Physical RFC Finding

Plaintiff believes that the RFC determination in Finding No. 5 is not supported by substantial evidence (DN 12 PageID # 1602-09).   Plaintiff contends that the ALJ improperly based the physical RFC finding on an impermissible interpretation of two MRIs taken of the Plaintiff because the MRIs were not reviewed by the consultive physicians who gave their opinion (DN 12 PageID # 1605-06).

In response, Defendant contends that the ALJ did not impermissibly interpret medical imaging because the imaging had already been interpreted by a medical source: the ALJ merely summarized those findings (DN 14 PageId # 1632-33) (citing Tr. 200-02).   Defendant asserts that the ALJ properly considered the MRIs together with observations of medical sources, opinion evidence, and prior administrative medical findings in her determination (DN 14 PageID # 1633). Defendant maintains that the ALJ properly based the RFC finding on the record as a whole: ultimately finding greater physical limitations than those opined by Drs. Farmer, Saranga, and Johnson (*Id.*).   Globally, Defendant responds that the ALJ is not limited in her determination only to a directly corresponding medical opinion and is neither required to base her RFC finding on a medical opinion (DN 14 PageID # 1632).

Plaintiff also maintains that the lack of explanation as to why the prior ALJ's finding of limitation to frequent climbing of ramps and stairs was omitted constitutes error (DN 12 PageID

6

# 1605-06).   Defendant asserts that an ALJ is not bound by prior findings when a claimant files a subsequent application for benefits, though the ALJ may review those prior findings (DN 14 PageID # 1634) (citing *Earley v. Comm'r of Soc. Sec.*, 893 F.3d 929 (6th Cir. 2018)).   In fact, the ALJ found that the Plaintiff was more limited than initially found: Plaintiff can occasionally—rather than frequently—climb ramps and stairs (*Id.*) (citing Tr. 200; 248).

   b.   Mental RFC Finding

   Plaintiff contends that the ALJ failed to give proper weight to the medical opinions of the Plaintiff's primary care doctor, Dr. Ashley Matney, M.D., and mischaracterized the records from LifeSkills Counseling Center ("LifeSkills") to support the mental RFC determination (DN 12 PageID # 1606-08).   Plaintiff believes that the ALJ improperly discounted Dr. Matney's opinion, which opined that Plaintiff's mental impairments make her unable to meet competitive standards in most assessed areas and that Plaintiff would likely be absent at least four days per month due to these impairments (DN 12 PageID # 1607).   Plaintiff further asserts that the records from LifeSkills Counseling Center document more significant mental limitations than those found by the ALJ (DN 12 PageID # 1607-08).

   Defendant contends that both arguments are an improper attempt by Plaintiff to encourage this Court to reweigh the evidence from Dr. Matney and LifeSkills as well as to find Dr. Matney's opinions more persuasive than the ALJ concluded (DN 14 PageID # 1634-35) (citing *Nasser v. Comm'r of Soc. Sec.*, No. 22-1293, WL 17348838, at *2 (6th Cir. Dec. 1, 2022)).   Defendant asserts that the ALJ reasonably concluded that Dr. Matney's opinion was not supported by the treatment notations of overall conservative treatment, description of mild or moderate symptoms, and lack of notation of marked limitations (DN 14 PageID # 1635).   Defendant further asserts that

the ALJ appropriately concluded that the LifeSkills records evidenced emotional stress but did not indicate limitation in any functional domain (DN 14 PageID # 1631).   Defendant contends as the ALJ reasonably relied on the record as a whole to reach the mental RFC finding, it is supported by substantial evidence (*Id.*).

       c.   Symptoms Evaluation

Plaintiff contends that the ALJ erred by failing to determine how her symptoms limit the Plaintiff's capacity for work having found the existence of medically determinable impairments that could reasonably be expected to produce symptoms (DN 12 PageID # 1608-09).   Plaintiff asserts that the ALJ failed to sufficiently discuss "other factors" concerning functional limitations and restrictions due to pain or other symptoms, though Plaintiff acknowledges that the ALJ properly evaluated the relevant factors: daily activities; location, duration, frequency, and intensity of the pain; precipitating and aggravating factors; medications and side effects therefrom; and measures used to alleviate pain (*Id.*).

Defendant asserts that an ALJ need not discuss every factor under 20 C.F.R. § 404.1529 in her decision (DN 14 PageID # 1635-36) (citing *Kimberly K. v. Kijakazi*, No. 1:22-CV-00090-LLK, 2023 WL 2386816, at *3 (W.D. Ky. Mar. 6, 2023).   The ALJ did consider Plaintiff's testimony, reported activities, treatment notes, and prior administrative medical findings and opinions in her determination; thus, Defendant contends that the ALJ committed no error by failing to specifically address "other factors" (*Id.*).

2. *Applicable Law*

a.   Residual Functional Capacity Findings

The RFC determination is the ALJ's ultimate determination of what a claimant can still perform despite his or her physical or mental limitations.   20 C.F.R. §§ 404.1545(a), 404.1546(c). ALJs make this finding based on a consideration of medical source statements, prior administrative medical findings, and all other evidence in the case record.   20 C.F.R. §§ 404.1529, 404.1545(a)(3), 404.1546(c).   Thus, in making the RFC determination, ALJs must necessarily evaluate the persuasiveness of the medical source statements and prior administrative medical findings in the record as well as assess the claimant's subjective allegations.   20 C.F.R. §§ 404.1520c, 404.1529(a).

The new regulations for evaluating medical opinions and prior administrative medical findings are applicable to Plaintiff's case because she filed her application after March 27, 2017 (Tr. 194; 420-26; 427-33).   *See* 20 C.F.R. §§ 404.1520c, 416.920c.   The new regulations explicitly state "[w]e will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s),"[3] in the record, even if it comes from a treating medical source.   20 C.F.R. §§ 404.1520c(a), 416.950c(a).[4]   Instead, ALJs will now evaluate the "persuasiveness" of medical opinions and prior administrative medical findings by utilizing the five factors listed in paragraphs (c)(1) through (c)(5) of the regulation. 20 C.F.R. §§ 404.1520c(a) and (b), 416.920c(a) and (b).   The five factors are supportability,

---

3 At the initial and reconsideration levels State agency medical and psychological consultants review the evidence in the case record and make "administrative medical findings."   20 C.F.R. §§ 404.1513a(a)(1), 416.913(a)(1). Administrative law judges "must consider" the administrative medical findings of non-examining state agency medical or psychological consultants according to the new regulation.   20 C.F.R. §§ 404.1513a(b)(1), 416.913(b)(1).
4  The language quoted above indicates that the new regulation has done away with the controlling weight rule in 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).

consistency, relationship with the claimant, specialization, and other factors. 20 C.F.R. §§ 404.1520c(c)(1)-(5), 416.920c(c)(1)-(5).[5] Of these five factors, the two most important are supportability and consistency. 20 C.F.R. §§ 404.1520c(a) and (b)(2), 416.920c(a) and (b)(2). Further, the regulation requires ALJs to explain how they considered the supportability and consistency factors in determining the persuasiveness of the medical source's opinion. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).

b.   Symptoms Evaluation

In assessing a claimant's RFC, the ALJ must necessarily consider the subjective allegations of the claimant and make findings. 20 C.F.R. §§ 404.1529, 416.929; Social Security Ruling 16-3p. A claimant's statement that she is experiencing pain or other symptoms will not, taken alone, establish that she is disabled; there must be medical signs and laboratory findings which show the existence of a medical impairment that could reasonably be expected to give rise to the pain and other symptoms alleged. 20 C.F.R. §§ 404.1529(a), 416.929(a).

In determining whether a claimant suffers from debilitating pain and other symptoms, the two-part test set forth in *Duncan v. Sec'y of Health & Hum. Servs.* applies. 801 F.2d 847, 853 (6th Cir. 1986). The ALJ must examine whether there is objective medical evidence of an underlying medical condition. *Id.* If there is, then under *Duncan* the ALJ must determine: "(1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such severity that it can reasonably be expected to produce the alleged disabling pain." *Id.* When, as in this case, the

---

5 In assessing the relationship with the client, consideration should be given to the following: length of the treatment relationship, frequency of examinations, purpose of the treatment relationship, extent of the treatment relationship, and examining relationship. 20 C.F.R. §§ 404.1520c(c)(3)(i)-(v), 416.920c(c)(3)(i)-(v).

reported pain and other symptoms suggest an impairment of greater severity than can be shown by objective medical evidence, the ALJ will consider other information and factors which may be relevant to the degree of pain and other symptoms alleged.   20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3).

    *3.   Discussion*

      a.   Physical RFC Finding

First, Plaintiff argues that because two MRIs taken on April 4, 2022, and October 20, 2022, were not available when the state agency medical consultants prepared their findings, that the ALJ's use of the MRIs in her determination constituted improper lay interpretation of raw medical data (DN 12 PageID # 1605-06).   Because of such impermissible lay interpretation, Plaintiff contends that the resulting RFC finding is not supported by substantial evidence (*Id.*).

ALJs make this RFC finding based on a consideration of medical source statements, prior administrative medical findings, and all other evidence in the case record.   20 C.F.R. §§ 404.1529, 404.1545(a)(3), 404.1546(c).   Necessarily, the ALJ must evaluate medical evidence to determine a plaintiff's RFC.   *See Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x 719, 726 (6th Cir. 2013).   The ALJ may not interpret raw medical data, as that is "beyond" their ability, but may rely on a medical expert's interpretation.   *Id.* (ALJ relied on radiologist's reading of x-rays of plaintiff's hands and lumbar spine so RFC findings consistent with the radiologist's interpretation were appropriate).

While the state agency medical experts did review Plaintiff's records in 2021 before the two MRIs were taken, the MRIs were interpreted by Dr. Jason White, M.D. (Tr. 1426; 1545).   The findings the ALJ included are exactly as Dr. White interpreted, thus the ALJ did not impermissibly interpret raw medical data but rather relied on the medical expert's opinion (*Id.*).   Consequently,

Plaintiff is not entitled to relief on this challenge to the ALJ's physical RFC determination."

Next, Plaintiff complains that the ALJ's "decision lacks a discussion as to why the prior ALJ finding of limitation to frequent climbing of ramps and stairs is omitted from the current RFC finding" (DN 12 PageID # 1606).   Plaintiff is referring to the December 19, 2016, decision of ALJ William C. Zuber which found that Plaintiff has the RFC to perform less than a full range of medium work due to certain postural limitations which include "no more than frequent . . . climbing of ramps or stairs" and certain environmental limitations (Tr. 248).   Plaintiff is also referring to the January 13, 2023, decision of ALJ Susan Brock which concluded that Plaintiff has the RFC to perform less than a full range of light work due to certain postural limitations which include "she can occasionally climb ramps and stairs" as well as certain environmental and mental limitations (Tr. 200).   Contrary to Plaintiff's assertion, ALJ Brock acknowledged ALJ Zuber's RFC finding, Acquiescence Ruling 98-4(6), and *Drummond v. Comm'r of Soc. Sec.*, 126 F.3d 837 (6th Cir. 1997) (Tr. 203).   Further, ALJ Brock explained why new and material evidence of record warranted the new findings regarding Plaintiff's RFC (Tr. 202-03).   More specifically, ALJ Brock gave Plaintiff the benefit of the doubt—concerning the October 2022 medical evidence addressing her cervical spine—by reducing Plaintiff's physical RFC to a light level of exertion with postural limitations that included further restricting her ability to climb ramps and stairs, and by adding some limitations on use of her upper extremities (Tr. 200, 202).   ALJ Brock's findings comport with applicable law because she gave a fresh review to Plaintiff's new applications and the new evidence concerning her impairments while being mindful of ALJ Zuber's past RFC finding.   *See Early v. Comm'r of Soc. Sec.*, 893 F.3d 929, 931-34 (6th Cir. 2018).   Moreover, substantial evidence in the record supports those new RFC findings.   Consequently, Plaintiff is not entitled

12

to relief on this claim.

Plaintiff then contends that the ALJ erred when she failed to discuss why she did not adopt Amber Johnson's expert opinion—that Plaintiff should be limited in looking up for long periods of time—while adopting other limitations expressed by Ms. Johnson (DN 12 PageID # 1605-06). The Court will begin by observing that the ALJ found Ms. Johnson's opinion "somewhat persuasive" because it was "well-supported by her examination" results (Tr. 203). However, the ALJ also indicated that subsequently received "objective evidence would support further limitation" (*Id.*). Moving to the ALJ's RFC determination, it does not expressly include a limitation on looking up for long periods of time (Tr. 200). But it does contain the postural limitation, "[s]he can occasionally reach overhead bilaterally" (*Id.*). This postural limitation would effectively address both the frequency and length of time that Plaintiff would be looking up in an eight-hour workday. At the same time this postural limitation addresses Plaintiff's subjective complaints concerning the use of her upper extremities (Tr. 202). As the ALJ may have applied Ms. Johnson's limitation on looking up, there would have been no need to discuss why it was not adopted.

Notwithstanding, an ALJ is not required to adopt an expert's opinion wholesale. *See Reeves v. Comm'r of Soc. Sec.*, 618 Fed. App'x. 167, 275 (6th Cir. 2015) (upheld ALJ's RFC findings that did not adopt all of the medical experts' limitations based on ALJ's consideration of record as a whole). "An ALJ need not incorporate every limitation from a medical source's recommendation, even if it finds that medical source to be persuasive." *Kinney v. Comm'r of Soc. Sec.*, No. 23-3889, 2024 U.S. App. LEXIS 12174, at *7-8 (6th Cir. May 20, 2024). For the above stated reasons, the ALJ's decision comports with applicable law even if she did not expressly adopt

Ms. Johnson's looking up limitation within the RFC determination.

### b. Mental RFC Finding

Plaintiff contends that the mental RFC finding is not supported by substantial evidence because the ALJ did not adequately consider and adopt Dr. Ashley Matney's opinion as to Plaintiff's mental capacity (DN 12 PageID # 1606-08).   Plaintiff further emphasizes that support for Dr. Matney's opinion can be found in the therapy notes from LifeSkills (*Id.*).   For the reasons that follow, Plaintiff's argument fails because the record indicates that the ALJ appropriately evaluated the persuasiveness of Dr. Matney's medical opinions in the context of determining Plaintiff's RFC.   20 C.F.R. §§ 404.1520c, 404.1529(a).   While Plaintiff cites evidence in the record that substantiates a more favorable finding concerning the persuasiveness of Dr. Matney's opinion, substantial evidence in the record supports the ALJ's finding that nothing in Dr. Matney's own treatment records or the therapy records from Lifeskills supports such limitations" (*See* Tr. 202-03).

The ALJ considered the therapy notes from LifeSkills as primarily evidencing stress from relationships but not "marked levels of limitation in any functional domain" (Tr. 202).   In the therapy notes from LifeSkills, there are frequent notes about Plaintiff's stress regarding her divorce and finances (Tr. 1242; 1253; 1255; 1260; 1269; 1284; 1287; 1290; 1293; 1296; 1338).   Plaintiff does report having anxiety and depression at times (Tr. 1253; 1266; 1271; 1274; 1275; 1302; 1308; 1311; 1347).   Plaintiff expressed having memory issues at some sessions (Tr. 1284; 1293; 1299; 1305; 1308; 1311; 1338).   In sum, substantial evidence supports the ALJ's finding that the LifeSkills therapy notes do not evidence significant limitation in any functional domain but primarily pertain to relational and financial stress the Plaintiff experienced.

Dr. Matney's notes in Plaintiff's initial care visit that she only complained of anxiety but no depression, so Plaintiff was prescribed Duloxetine in July of 2021 (Tr. 1061).   Two months later, Plaintiff reports that she wants to stop taking any medication (Tr. 1053).   Then in July of 2022, Plaintiff again started medication for bipolar disorder (Tr. 1494).   One month later, Dr. Matney prescribed a different medication to treat Plaintiff's bipolar disorder, noting that the condition was of "mild or moderate severity" (Tr. 1487).   At the end of September, Plaintiff had still not started the new medication for her bipolar disorder (Tr. 1530).   Plaintiff has never been recommended or needed in-patient or emergency care for her mental illnesses.   In sharp contrast to the treatment notes, Dr. Matney's Treating Source Statement opines that in almost every category the Plaintiff is unable to meet competitive standards (Tr. 1509-14).   Consequently, there is substantial evidence within Dr. Matney's treatment notes to support the ALJ's finding that Dr. Matney's medical opinions are not supported by her own treatment notes.

Based on the record as a whole, there is substantial evidence for the ALJ's finding that Plaintiff is not impaired with any "marked levels of limitation in any domain" (Tr. 203).   There is also substantial evidence in the record to support the ALJ's determination that, at most, the treatment records supports a finding that Plaintiff can perform "simple, lower-stress work with limited contact with others" (*Id.*).   Consequently, the ALJ properly weighed the supportability and consistency of the record supporting Dr. Matney's opinion and explained why she would not adopt Dr. Matney's opinion in its entirety (*Id.*).

15

c. Symptoms Evaluation

Plaintiff argues that the ALJ failed to address her reported symptoms of frequent headaches and need for daily nap and their impact on her functioning, thus the ALJ's finding is not based on substantial evidence (DN 12 PageID # 1608-09).[7]   While the ALJ did find that Plaintiff's impairments could reasonably produce the alleged symptoms, the ALJ found that her subjective statements concerning the intensity, persistence, and limiting effects of her symptoms were inconsistent with the objective medical evidence and other evidence in the record (Tr. 200-04). The ALJ did credit part of her testimony and reduced her physical RFC from medium to light work with additional limitations including use of her upper extremities (Tr. 202).

Having found that Plaintiff suffers from an impairment that could reasonably be expected to produce the alleged symptoms, the ALJ evaluated the intensity, persistence, and limiting effects of the alleged symptoms (Tr. 200).   Because Plaintiff's alleged symptoms suggest impairments with limitations of a greater severity than was shown by objective medical evidence, the ALJ considered additional relevant evidence according to the seven factors outlined in the regulation (Tr. 200-04).   20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3).   However, "[a]n ALJ need not discuss every Section 404.1529 factor in her written decision" to be supported by substantial evidence. *Kimberly K. v. Kijakazi*, No. 1:22-CV-00090-LLK, 2023 U.S. Dist. LEXIS 36672, at *7 (W.D. Ky. Mar.6, 2023).   Plaintiff's challenge that the ALJ did not properly consider "other factors" fails because the ALJ's decision is supported by substantial evidence.

A plaintiff's level of daily activity is a factor which the ALJ may consider in determining the extent to which pain is of disabling severity.   20 C.F.R. §§ 404.1529(c)(3)(i), 416.929(c)(3)(i);

---

7 "Credibility" is no longer part of a proper analysis under § 404.1529.   Social Security Ruling 16-3p.

*Bogle v. Sullivan*, 998 F.2d 342, 348 (6th Cir. 1993); *Blacha v. Sec'y of Health & Hum. Servs.*, 927 F.2d 228, 231 (6th Cir. 1990) (As a matter of law, the ALJ may consider household and social activities in evaluating complaints of disabling pain).   Plaintiff's activities during the relevant time period involved painting and journaling (Tr. 201).   This level of activity, while not extensive, is not indicative of disabling pain.   *See Crisp v. Sec'y of Health & Hum. Servs.*, 790 F.2d 450, 453 (6th Cir. 1986).

The frequency that plaintiff has sought treatment for the allegedly disabling symptoms is a factor that may be considered in assessing her subjective complaints.   20 C.F.R. §§ 404.1529(c)(3)(v) and 416.929(c)(3)(v).   Plaintiff did not seek treatment from after her initial hearing in 2016 until July 2021 (Tr. 1061).   Once Plaintiff re-established care at her primary care doctor, she did report back for follow-up care and later to the hospital for pain and other symptoms (Tr. 1479-1507).   Plaintiff was discharged from physical therapy in January of 2022 for failing to appear to three appointments and notes show that she was making slow progress (Tr. 1181).   Plaintiff began psychological counseling in March of 2021 and continued treatment throughout the entirety of the record (Tr. 1241-1350).

Another factor that may be considered is the medication used to alleviate the alleged pain or other symptoms.   20 C.F.R. §§ 404.1529(c)(3)(iv), 416.929(c)(3)(iv).   Mild medication and infrequency of dosages taken by the claimant do not bear out claims of debilitating pain.   *See Maher v. Sec'y of Health & Hum. Servs.*, 898 F.2d 1106, 1109 (6th Cir. 1989).   Plaintiff initially declined referral to pain management for her neck pain (Tr. 1506).   At other times, Plaintiff did request an increase in her medication in response to increased pain symptoms (Tr. 1426; 1535).   Plaintiff declined a steroid injection for her back pain (Tr. 1496).   Plaintiff's records indicate she

17

was mostly consistent in requesting and taking medication, though she declined pain management.

Another factor that may be considered is whether there are "any inconsistencies in the evidence and the extent to which there are any conflicts between your statements and the rest of the evidence . . . ". 20 C.F.R. §§ 404.1529(c)(4) and 416.929(c)(4). The ALJ noted several inconsistencies between Plaintiff's testimony and the evidence (Tr. 201-03). Plaintiff reported hip and back pain to her primary care doctor in 2021 and was referred to physical therapy (Tr. 1061). However, an exam indicated that Plaintiff had full range of motion in all joints (Tr. 1038). By September, Plaintiff reported improvements from physical therapy, though the therapy notes indicate she was making slow progress, but was discharged for failing to attend three appointments by January of 2022 (Tr. 1181). In March of 2022, Plaintiff reported pain in her legs radiating from her back and requested an increase in medication, but MRIs done in April of 2022 showed only mild stenosis (Tr. 1426). Plaintiff declined referral to pain management and two months later reported improvement in her neck pain (Tr. 1506; 1496). In September of 2022, Plaintiff sought care at the hospital emergency room for back pain and her medication was changed (Tr. 1535). In October of 2022, a new MRI was taken and Plaintiff was referred to physical therapy and to a neurosurgeon, though Plaintiff was never recommended for surgery (Tr. 1540-41). The ALJ acknowledged that until October 2022, the medical evidence concerning Plaintiff's physical impairments was not significantly different from the earlier ALJ hearing in 2016 (Tr. 202). The ALJ pointed out that Plaintiff underwent only the "most conservative treatment" and declined other treatment, like pain management (Tr. 202). Plaintiff returned to work one day as cleaner but stated that she was "down" for four days after (*Id.*). Even though the ALJ found her symptoms to be inconsistent with the objective medical evidence, the ALJ reduced Plaintiff's capacity from

medium to light level of exertion with postural and hazard limitations and further limited her use of upper extremities based on her subjective testimony (*Id.*).

Plaintiff's contention that the ALJ failed to adequately address Plaintiff's headaches and need for a daily nap due to poor sleep does not defeat the above analysis. The ALJ did acknowledge both symptoms but did not make a specific finding (Tr. 201). As discussed, the ALJ's findings are based on substantial evidence, satisfying the scope of this review. The ALJ's acknowledgment of the symptoms supports an inference that the ALJ considered the symptoms but declined to make a finding as to those symptoms in the resulting RFC determination. Further, even if it were error, such error would be harmless and not require remand. *See Griffeth v. Comm'r of Soc. Sec.*, 217 F. App'x 425, 428 (6th Cir. 2007) ("We are not required to remand where to do so would be an idle and useless formality.").[8]

The ALJ found from the medical record and Plaintiff's testimony that Plaintiff does not suffer pain to the extent she testified. In the absence of detailed corroborating evidence of Plaintiff's subjective complaints, it becomes the duty of the ALJ to assess the degree to which Plaintiff suffers from the pain or other symptoms. Since tolerance of pain and other symptoms is a highly individualized matter, the conclusion of the ALJ, who has the opportunity to observe the claimant's demeanor, "should not be discharged lightly." *Houston v. Sec'y of Health & Hum. Servs.*, 736 F.2d 365, 367 (6th Cir. 1984) (citing *Beavers v. Sec'y of Health, Educ. & Welfare*, 577 F.2d 383 (6th Cir. 1978)). The undersigned concludes that the ALJ's findings are supported by substantial evidence and fully comport with applicable law, including the regulations for

---

8 In reaching this conclusion, the Court notes that Plaintiff has failed to explain what harm, if any, she suffered as a result of the ALJ's failure to adequately discuss these symptoms (*See* DN 12 PageID # 1608-09).

evaluating claimant's testimony regarding her symptoms.   *See* 20 C.F.R. §§ 404.1519a-p, 404.1527, 404.1529, 416.919a-p, 416.927, 4416.929.

### D.      Findings No. 10 and 11

*1.  Arguments of the Parties*

Plaintiff contends that because the RFC finding is not supported by substantial evidence as addressed in her response to Finding No. 5, *supra*, that the resulting identification of jobs in Finding No. 10 by the vocational expert that the Plaintiff can perform does not accurately portray the physical and mental imitations at issue (DN 12 PageID # 1610).   As a result, Plaintiff also asserts that Finding No. 11, that Plaintiff is not under a disability, is not supported by substantial evidence following her argument as it relates to Finding No. 5 (*Id.*).

Defendant responds that the ALJ presented an accurate hypothetical to the vocational expert, based on the ALJ's reasonable RFC findings, thus the Plaintiff's argument fails (DN 14 PageID # 1636-37).

*2.  Applicable Law*

At the fifth step, the Commissioner has the burden of demonstrating a significant number of jobs exist in the national economy that the claimant can perform, given his or her RFC, age, education, and past work experience.   20 C.F.R. §§ 404.1520(a)(4)(v) and (g), 404.1566(a), 416.920(a)(4)(v), 416.966(a); *Wyatt v. Sec'y of Health & Hum. Servs.*, 974 F.2d 680, 684 (6th Cir. 1992); *Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990); *Allen v. Califano*, 613 F.2d 139, 145 (6th Cir. 1980).   A vocational expert's testimony can constitute substantial evidence to support the Commissioner's finding that a plaintiff is capable of performing a significant number of jobs existing in the national economy, *Bradford v. Sec'y, Dep't. of Health & Hum. Servs.*, 803

F.2d 871, 874 (6th Cir. 1986) (*per curiam*), so long as a vocational expert's testimony is based on a hypothetical question which accurately portrays the claimant's physical and mental impairments. *Varley v. Sec'y of Health & Hum. Servs.*, 820 F.2d 777, 779 (6th Cir. 1987).   If the vocational expert identifies a significant number of jobs existing in the national economy that the claimant could perform, that testimony constitutes substantial evidence to satisfy the legal standard that the Commissioner must meet.   *See e.g., McCormick v. Sec'y of Health & Human Servs.*, 861 F.2d 998, 1000, 1002 (6th Cir. 1988).

   *3.  Discussion*

   Plaintiff argues that as the FC determination in Finding No. 5 was erroneous, the resulting hypothetical posed to the vocational expert Katherine Bradford is also erroneous (DN 12 PageID # 1610).   Thus, the Plaintiff asserts that the ALJ cannot properly base her decision on flawed hypothetical questioning from the vocational expert (*Id.*).   Plaintiff does not claim that the hypothetical questions inaccurately expressed the ALJ's RFC findings (*Id.*).   Because the ALJ's RFC determination was supported by substantial evidence, as discussed *supra*, and the ALJ's hypothetical questions to the vocational expert accurately conveyed the limitations set forth in the RFC determination, the ALJ appropriately found that the vocational expert's testimony supports the finding that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform.   Plaintiff is not entitled to relief on her challenges to Findings No. 10 and 11.

   E.    Conclusion

   As the Court noted, "[a]s long as substantial evidence supports the Commissioner's decision, we must defer to it, even if there is substantial evidence in the record that would have supported an opposite conclusion."   *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir.

2004) (cleaned up).   Regardless of how this Court may view the evidence, it is not this Court's place to re-try or re-evaluate the findings of the ALJ.   42 U.S.C. § 405(g).   Rather, this Court is only to find if substantial evidence exists to support the ALJ's decision and if the ALJ followed the applicable law.   *Id.*   After reviewing the record, the Court concludes that the ALJ's determination is supported by substantial evidence in the record and correctly followed the applicable law.   Therefore, Plaintiff is not entitled to relief with regard to her challenge.

IV.   ORDER

**IT IS HEREBY ORDERED** that the final decision of the Commissioner is **AFFIRMED**.


**H. Brent Brennenstuhl**
**United States Magistrate Judge**

September 13, 2024

Copies:       Counsel

22